IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

_____

| | | |
|---|---|---|
| KELLY ZAVALNEY, | ) | Cause No. CV 09-62-BU-SEH-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS |
| | ) | OF U.S. MAGISTRATE JUDGE |
| SAM LAW; ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On July 31, 2009, Petitioner Kelly Zavalney filed this action for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner proceeding pro se.

**I. Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District

Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Id. If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order." Id.

## II. Background

"Nearly twenty years ago, Zavalney, under the influence of illicit drugs, shot and killed a man in Idaho." Appellant Br. (doc. 2-2) at 11,[1] State v. Zavalney, No. DA 08-0339 (Mont. filed Oct. 23, 2008). He served ten years in prison before being released on parole. Id. at 11.

On June 1, 2004, Petitioner was charged in Montana's Eighteenth Judicial District Court, Gallatin County, with criminal possession of dangerous drugs. Id. at 12. He was represented by J. Blaine Anderson. Pet. (doc. 2) at 7-8 ¶ 17. Petitioner pled guilty. Pet. at 3 ¶¶ 3-5. On July 1, 2005, he was designated a persistent felony offender ("PFO"), Mont. Code Ann. § 46-18-501 (1977), and sentenced to serve 40 years in prison. "The district court made clear that the severity of the sentence

---

[1] The page number is the CM-ECF page number. CM-ECF numbers pages consecutively. For example, the cover page of a brief is page 1.

imposed was based on Zavalney's prior murder conviction." Appellant Br. at 12, Zavalney, No. DA 08-0339. The trial court imposed a unitary sentence without distinguishing the amount of time imposed for the drug offense and the amount of time imposed for the PFO designation.

Petitioner did not appeal but applied to the Sentence Review Division of the Montana Supreme Court. The Division affirmed his sentence on March 21, 2006. Appellant Br. at 13, Zavalney, No. DA 08-0339.

In June 2006, Petitioner filed a petition for postconviction relief in the trial court. He claimed his sentence violated the Double Jeopardy Clause and the proscription against cruel and unusual punishment. He also argued that the trial court misunderstood its authority and could have declined to sentence Petitioner as a persistent felony offender. Id. On May 21, 2008, the trial court denied the petition. Id.

Petitioner appealed, represented by new counsel, Robin Meguire. Counsel argued that the trial judge's comments at sentencing showed that Petitioner was being punished twice for the Idaho murder, rather than simply receiving a harsher sentence for the drug offense. Appellant Br. at 15-18, Zavalney, No. DA 08-0339. She also asserted that the sentence was disproportionate to the crime and so was cruel and unusual punishment. Id. at 18-22. Finally, she argued that Petitioner was deprived

of due process and access to the courts because the trial court did not rule on his petition for two years. Id. at 23-23.

The Montana Supreme Court noted that postconviction relief is not a substitute for direct appeal, but it also considered Petitioner's claims on the merits. On June 9, 2009, the Montana Supreme Court affirmed the trial court's denial of postconviction relief. Order ¶¶ 4-8, Zavalney v. State, No. DA 08-0339 (Mont. June 9, 2009).

Petitioner signed his federal habeas petition and deposited it in the prison mail system on July 30, 2009. Pet. at 8, Pet'r Decl. ¶ C; Houston v. Lack, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

### III. Petitioner's Allegations

First, Petitioner contends that he received one, unitary prison term of 40 years, rather than one sentence for criminal possession of dangerous drugs and a consecutive sentence as a persistent felony offender. Pet. at 10-12.

Petitioner's second and third claims allege, respectively, that he was subjected to double jeopardy and to cruel and unusual punishment. Pet. at 13-16.

Fourth, Petitioner asserts that his trial counsel was ineffective at the Sentence Review proceedings because he had the odor of alcohol on his breath and because he "made no statements on behalf of Zavalney [and] presented no arguments." Petitioner also asserts that trial counsel was ineffective because he counseled Petitioner to

pursue relief before the Sentence Review Division rather than before the Montana Supreme Court on direct appeal. As a result, Petitioner forfeited his federal constitutional claims. Petitioner also avers that trial counsel filed Petitioner's postconviction petition but "failed to follow up," resulting in a two-year wait for ruling because the trial court misplaced the petition, and "abandoned" him on postconviction appeal by turning his case over to the Office of the Public Defender. Finally, Petitioner claims that postconviction appellate counsel was ineffective for failing to appeal trial counsel's forfeiture of direct appeal and for failing to argue that Petitioner's sentence should not have been one unitary term but bifurcated between the substantive offense and the persistent felony offender sentence. Pet. at 17-19.

**IV. Analysis**

Although some or all of Petitioner's claims may be procedurally barred, it is clear that he is not entitled to relief on the merits of his claims. Accordingly, it is more efficient to proceed to the merits. 28 U.S.C. § 2254(b)(2); Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir. 1983).

### A. Unitary Sentence

No federal law proscribes the imposition of one sentence for both a drug

offense and recidivism. E.g., 21 U.S.C. § 841(b)(1)(A) (mandating life imprisonment for person responsible for more than 50 grams of actual methamphetamine and having two or more prior felony drug convictions). State law expressly holds that the sentence should be unitary. State v. DeWitt, 149 P.3d 549, 551 ¶ 11 (Mont. 2006) ("a persistent felony offender designation is not itself a separate crime carrying a separate sentence, but is a procedural sentence enhancement required by statute."). And, regardless, Petitioner shows no prejudice as a result of the fact that his sentence was not bifurcated between the drug crime and the PFO designation. Consequently, there is no federal due process violation. Hicks v. Oklahoma, 447 U.S. 343, 346 (1980). Petitioner's first claim for relief should be denied.

### B. Double Jeopardy

State law defines the persistent felony offender designation as a sentence enhancement, not a separate offense. DeWitt, 149 P.3d at 551 ¶ 11. "[P]rior commission of a serious crime . . . is as typical a sentencing factor as one might imagine." Almendarez-Torres v. United States, 523 U.S. 224, 230 (1998).

Even if a PFO designation were considered a separate offense, there would be no federal double jeopardy violation. Blockburger v. United States, 284 U.S. 299 (1932), holds that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two

offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. at 304. Criminal possession of dangerous drugs, Mont. Code Ann. § 45-9-102(1) (2003), requires possession of drugs statutorily defined as dangerous. A persistent felony offender is someone who has previously been convicted, committed another felony within five years or his conviction or release on parole. Id. § 46-18-501. The statutes have no elements in common. They plainly do not constitute double jeopardy under the Blockburger test. Petitioner's second claim for relief should be denied.

**C. Cruel and Unusual Punishment**

The United States Supreme Court employs a lengthy and detailed analysis to determine whether a given sentence is disproportionate to a crime. However, it is not necessary in this case to pursue the analysis to the same level of detail the Court reached in Solem v. Helm, 463 U.S. 277, 292 (1983), or Rummel v. Estelle, 445 U.S. 263 (1980);[2] see also Harmelin v. Michigan, 501 U.S. 957 (1991). "[O]utside the context of capital punishment, successful challenges to the proportionality of

---

[2] This area of constitutional law is notoriously fractured. For instance, Harmelin appears to hold that there is no proportionality analysis under the Eighth Amendment. See 501 U.S. at 965 ("the Eighth Amendment contains no proportionality guarantee."). That portion of the opinion – Part I – is joined only by one other Justice. The five-justice majority opinion in Harmelin is Part IV of Justice Scalia's opinion, 501 U.S. at 994-96. The majority holds that "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense," id. at 994, and that Harmelin's sentence was not cruel and unusual merely because it was mandated by statute rather than individualized, id. at 996.

particular sentences have been exceedingly rare." Rummel, 445 U.S. at 272.[3] Petitioner's sentence was not disproportionate in light of all the circumstances.

Under Montana law, the maximum penalty for criminal possession of dangerous drugs is five years. Mont. Code Ann. § 45-9-102(5) (2003). Petitioner was sentenced to serve forty years. But he was sentenced as a persistent felony offender, which extends the maximum penalty for *any* felony offense to 100 years for offenders with a defined criminal history. Id. §§ 46-18-502(1), -501.[4]

Nor does Petitioner's designation as a persistent felony offender, by itself, tell the whole story. His criminal history began in 1980, when he was about nineteen years old, with offenses related to substance abuse. He was convicted of reckless driving in 1980, driving under the influence in 1983 and again in 1985, and a felony, criminal possession of methamphetamine, in Gallatin County in January 1989.

---

[3] "[E]xceedingly rare" means, for example, that in Rummel, a mandatory sentence of life in prison, with the possibility of parole after twelve years, was not cruel and unusual even though it was based on three convictions incurred over a span of nine years and involving deception to obtain a *total* of less than $250. 445 U.S. at 264-66, 285.

[4] Petitioner probably could have been sentenced to the ten-year mandatory minimum set forth in § -502(2), because his Idaho felony arose at a time and in a manner when his first felony conviction for possession of methamphetamine could have constituted a prior felony for PFO purposes. See Mont. Code Ann. § 46-18-502(2) (2003); State v. Hawkins, 781 P.2d 259, 261 (Mont. 1989) (no requirement of finality in prior conviction); State v. Tracy, 761 P.2d 398, 401 (Mont. 1988) (prior conviction may be used in PFO analysis under subsection (2) even if offender not designated a PFO on prior occasion).

Sentencing Tr. at 32:17-22, 35:7-16, 37:23-38:1.[5]  He was "under the influence of Zanax, methamphetamine, a synthetic morphine Tolwin, marijuana and LSD, and . . . took . . . prescription drugs from [his] grandmother in Bozeman" at the time he committed first-degree murder in Idaho in 1989.  Id. at 36:12-21; https://www.accessidaho.org/public/corr/offender/search.html (accessed Nov. 2, 2009) (describing conviction as first-degree).  After that, though he took "every treatment possible in the Idaho state prison," Sentencing Tr. at 38:8-11, he was discovered to be high on cocaine while he was in prison, id. at 37:4-9.

Within five years of his release on parole from his Idaho murder sentence in 1999, Petitioner possessed and used methamphetamine again, beginning in November 2003.  Id. at 38:15-18.  He was arrested.  He pursued treatment, and the trial court ordered him not to use alcohol or dangerous drugs.  Id. at 39:16-40:10.  But he did.  He maintained "acquaintances . . . whom [he] knew used drugs."  Id. at 41:14-19.  He submitted someone else's urine for a drug test.  Id. at 41:24-42:9.  Only then he was charged and convicted of criminal possession of dangerous drugs.

Nonetheless, the trial court placed no restrictions on Petitioner's parole eligibility.  Sentencing Tr. at 74:18-19.  Parole eligibility is a significant factor. Helm, 463 U.S. at 303 n.32 (relying on petitioner's eligibility for parole in Rummel

---

[5]  Citations to transcripts refer to transcript pages, not CM-ECF pages.

FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE / PAGE 9

to distinguish that case from Helm's); see also Harmelin, 501 U.S. at 996 (noting that petitioner's mandatory life sentence without parole "does not foreclose . . . the possibilities of retroactive legislative reduction and executive clemency."). In Montana, absent any other restrictions imposed by the trial court, a prisoner must serve one-fourth of his sentence before he can be released on parole. Mont. Code Ann. § 46-23-201(3). For Petitioner, that is ten years. Ten years is well within the thirty-year statutory maximum available under federal law[6] for someone who has one prior felony drug conviction and is convicted of possession of any amount of methamphetamine. 21 U.S.C. § 841(b)(1)(C).

It is impossible to reach the conclusion that Petitioner's sentence amounts to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Even if other persons in Montana were sentenced to less time, Appellant Br. at Ex. 2 (doc. 2-2, 2-9), Zavalney, No. DA 08-0339, none of the Supreme Court's proportionality cases considers sentences actually received by other offenders within the sentencing jurisdiction. The analysis involves authorized sentences, not imposed sentences. A person who commits murder while high on illegal drugs cannot be surprised to receive a stiff sentence for any subsequent drug offense, and Petitioner's

---

[6] There is no parole in the federal system. 18 U.S.C. § 3624(a). Some statutes still refer to it, e.g., 21 U.S.C. § 841(b)(1)(C), but they apply to persons already sentenced and would apply in the event parole is reinstated.

sentence still permits him to be released after ten years. His case is not among the "exceedingly rare" ones contemplated in Rummel. His third claim for relief should be denied.

### D. Ineffective Assistance of Counsel

Strickland v. Washington, 466 U.S. 668 (1984), sets the standards with respect to claims alleging ineffective assistance of counsel. First, Petitioner must show that counsel's performance fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 687-88. Second, he must show that he was prejudiced by counsel's errors. Id. at 693. Under the first prong, counsel's performance need not be perfect. It must, however, fall "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970)). Under the prejudice prong, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Because none of Petitioner's claims in his federal petition has merit, he can show neither deficient performance nor prejudice as a result of any attorney's failure

FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE / PAGE 11

to present them on direct appeal, in postconviction proceedings, or on postconviction appeal.

As to the other claims he raises only under the rubric of ineffective assistance, they are equally lacking in merit. Petitioner has not identified any statements or arguments counsel could have made before the Sentence Review Division that, to a reasonable probability, would have resulted in a lesser sentence. Therefore, the prejudice prong of Strickland is not met. Petitioner's claim that he was prejudiced by the trial court's delay in addressing his postconviction petition is meritless because he is not entitled to a lesser sentence. Again, he cannot show prejudice.

All of Petitioner's claims of ineffective assistance of counsel should be denied.

## V. Certificate of Appealability

### A. Governing Law

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000). Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the questions are 'adequate to deserve encouragement to proceed further,'" Lozada v. Deeds, 498 U.S. 430, 432

(1991) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

**B. Discussion**

None of Petitioner's claims makes a substantial showing that he was deprived of a constitutional right. His first claim depends entirely on state law and misstates state law at that. His second claim is patently lacking merit because enhancing a sentence on the basis of a prior conviction is not double jeopardy but "as typical a sentencing factor as one might imagine." <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 230 (1998). His forty-year sentence for criminal possession of dangerous drugs is not disproportionate for a man who committed first-degree murder while high on illegal drugs, and Petitioner remains eligible for parole within ten years of the commencement of his sentence.

Petitioner's allegations of ineffective assistance of counsel that depend on these claims lack merit because the underlying claims lack merit. As to Petitioner's two additional claims of ineffective assistance, he has not identified any statements or arguments counsel could have made before the Sentence Review Division that, to a reasonable probability, would have resulted in a lesser sentence. And Petitioner's claim that he was prejudiced by the trial court's two-year delay in addressing his postconviction petition is meritless because he is not entitled to a lesser sentence.

There is no reason to encourage further proceedings in this case. A certificate

of appealability should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATIONS

1. The Petition (doc. 2) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to these Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

Petitioner must immediately notify the Court of any change in his mailing

address by filing a "Notice of Change of Address."  Failure to do so may result in dismissal of his case without notice to him.

DATED this 10th day of November, 2009.

                                               /s/ Keith Strong
                                               Keith Strong
                                               United States Magistrate Judge